1-0-5-8-2000-302-0-0-2-4 Michael Epstein and Cheryl Caraccio, Assemblants to Trustee Epple-Lee v. Timothy Rathbun v. City of Wilmington Epple-Lee, Trustee Assemblants by Diane Irvin Mr. Rathbun? Thank you, Your Honor. I hope I don't make it seem too simple the way our case appears to be, but I think it's a simple question of basic law. We all knew before we came into this courtroom, and that's the question of what is consideration and what is not. I would suggest to the Court that if this didn't happen in the bizarre world of small-town politics and was just like any other corporation employing any other individual, we'd never be here. My opponents almost would have you think there's a Defendant A, which is Wilmington under one mayor, and a Defendant B, which is Wilmington under another mayor. That wouldn't happen in the corporate world. No one would ever pretend that because management changed a little bit that the rules of everything they did before changed, that something's invalid or something's invalid. Most of the time, severance is often a gift, which is probably unenforceable. Other times, it's included in a contract, like we have here. When an employer makes a promise of a severance, as we have in this case, the employer in the private world would be stuck with his promise, whether a new president ran or whether a new manager came into town or whether somebody hated him before. But in the world of small-town politics, that's not what happens. In this particular case, we would suggest that there's little doubt that you would enforce this with respect to these employees if it was a private employer. But I would also suggest that because it's a public employee, it's even more important that you keep this promise. Why is that? That's because of the fact that we know that the law tends to protect public employees because they are subject to the whim and the will, often, of politicians who say, I don't like that, I don't like this. So we have civil service. Teddy Roosevelt, in the late 19th century, set up a system in New York, which has been imitated throughout our time to protect employees. My clients are higher-level employees than those usually protected by civil service. So they get the protection of a contract. So here, in one instance, we have a bill that's saying, you have a contract here, and this contract is valid, and thank you for your service. And then we have another one pretending that that's never, ever happened. Our complaint with the judge's ruling in this case exclusively is with the question of consideration. And we all remember the things that we see from time to time and day to day. And the favorite one that we all remember is, any consideration, no matter how slight, is sufficient for a promise. And in our case, we have more than that. We have, in fact, the doctrine recognizing favor at will employment, continuing the promise to continue. We also have the various cases which point out that by shortening the term of the contract, a promise is made not to work after a particular point in time. I think that when you look at many of the cases that we have, which talks about, one of my favorites, HURD, which says, it's insufficient to justify setting a contract absent fraud. I mean, come on, this isn't a fraud. It was a promise made, and it was a promise not kept. So I think that when Judge Petrangaro went and she said that, well, there wasn't consideration for this amendment, I don't believe that was the proper ruling. I think that when you look at the law in the case that we have here, I think that you would agree with us and should affirm the case. Another point that we bring out in our appeal, which is with respect to consideration, and that is that you have an executed contract as it came before the court. We all know the difference between an executory contract. That is, for example, a lease of land. That's the classic example. It's a promise to do something in the future. And when this contract was originally signed, it was a promise to do something in the future, promised by the employee to work, promised by the employer to pay that person for the work. However, at the time that this dispute arose, both sides had performed their promises. It was no longer executory. It was a completed contract. And the cases are consistent that you don't look at a completed contract to decide whether it had adequate consideration. But the reason why you're here is because the city didn't pay the severance. Yes, ma'am. So it's not executed. I mean, it's not completed. I guess you're correct in that sense. And I see what you're saying, but I believe my client's performance is complete. And when I talk about a completed performance, I'm talking about my client's obligation. So to that extent, Your Honor, it would be correct. But it would be like the landlord saying, well, my promise for you to occupy land wouldn't be, even though you've occupied it, that I don't have to pay the rent because it was an executory contract. I believe that, and I didn't cite this specifically, Your Honor, but I believe that when one party provides its full performance, that's considered an executed contract. Otherwise, the issue is never set before ever. So I respectfully think that it is, in fact, an executed contract. But the issue is it was the same performance under the old agreement as well, to work until a specific date. Actually, again, respectfully, Your Honor. That's why you're here. That's why you're asking the question. There are two reasons why that is not correct, okay? One is it's recognized in favor. Employment contracts such as these are considered at-will contracts, meaning that that person could have left and didn't leave, okay? And that is one. Secondly, the contract terms were different. One was to, I'm going to probably get my date wrong, like May 8th, and the other was through May 31st. Now, you might say to me, well, Mr. Affleck, it's a shorter term, not a longer term. I was about to say. Well, and the answer to that, Your Honor, is also very simple, which is if I get promised to be paid $100 for next month, and then you say, hey, am I only working for three weeks instead of the whole month, then I'd be saying, well, I could get my whole $100. I'm going to get $80. That's giving something up, the right to my salary for my work. That's why, when they shorten the term, they're giving something up. Just thinking that. Okay, but they shortened the term and they gave them more severance. They did. They did, Your Honor. Okay. But what I'm saying is, and this is where we get to what the law says, as opposed to what may strike you as a little difficult. And what the law says is any consideration in a shortened term of employment is sufficient, and also the person's agreement to continue working when they have a right not to is also sufficient. Might those be small things that are being given up by the employee? They might, yes. But the law says we're not going to look at that. Small additional obligations or terms of employment, even though it was shortened, did they have to do anything more? Did they take on any more responsibilities? The responsibilities were exactly the same. All right. That's what I find difficult, but thank you for addressing my concern. Your Honor, I can see people saying, at the end of the political term, they're giving a severance. At the end of a political term, we're rewarding these people. We're going to give them something they'll want. That's the same reason we're here in the first place. But in reality, if we just back away and we say employer and employee, and if General Motors did this thing, we wouldn't have that argument. I mean, it's just that simple. It happened. I've done this myself. I'm an employer. I employ about 30 people. A lot of them are really nice. Some of them leave. I will give them a severance if they leave on good terms. I don't have to do it, but once I've made that promise, and once they stay in relation to that promise, and I've made this one too, I say, Mr. Young Lawyer, I know you've got a chance to leave. If you stay another three weeks while I get a substitute, I'll pay you extra money. And they do. And I pay them that. Why do I pay them that? For goodness of my heart? The cynics would say, no, you're obligated to. And I believe that's exactly what it is in this case. I think the bill is obligated to pay that money for that very reason. With that. Thank you. Thank you. May it please the Court. We are here today for no other reason than the outgoing administration of the city of Wilmington after the loss of the then current mayor, lost reelection. We are here because that administration attempted to influence the incoming mayor to bind his hands in regards to his choice for police chief and city administrator. I believe that's contained within the record, evidence to show that that's what they intended to do here. They shortened the term of an employment agreement that was to run until May 31st and shortened it to run until the term of the mayor when the agreement was signed. If it was the mayor at the time the agreement was signed, that's when the agreement would terminate. So. Does that protect that employee? I don't know why they did that other than the fact that they wanted to ensure that if the agreement was signed before Mayor Strong left office and they were in office and the administrator and the police chief were still holding a position at the time Mayor Strong left office, then they would get a year of severance just to remain in their duties until Mayor Strong left office. I believe that would have been in early June. Weren't there two reasons given? Pardon? Weren't there two reasons given for doing the amendments? One of the aldermen testified? Correct. He testified that they did it because they wanted the police chief and the administrator to continue in office. I believe there may have been some testimony in regards to have a smooth transition. But the purpose of the year of severance was to basically force the mayor's hand so that he would sit down and renegotiate the severance with each individual, the police chief and the city administrator, so that they would get one year more employment in exchange for not taking the one year severance. And that was Alderman Herms who testified that it was the intent, it was his intent or belief that Mayor Orr could renegotiate so that they could get a year's severance provided they, well so that they don't get a year's severance so that they could get a year's employment. And Alderman Herms stated that that was correct, that our intent was that the mayor would execute or would extend their contracts for another year under this agreement. That was our plan. So basically we're here today to decide, the court to decide how far can an outgoing administration force the hand of a new mayor under statute. Is that our issue? Or is the issue there's a contract? And is it enforceable? Well, that's true. Whether or not there's a contract and whether it's enforceable. But however, despite references to the corporate world, GM and other corporations, government is in a different light. The actions of the government are bound by certain statutes. There's a statute in regards to one contracting with a government has to know the limits that the government can contract. There has to be proper authority. There has to be a statute for it. In this particular case, the amended agreements are void, not just because of lack of consideration, but because there was no prior appropriation. Statute requires a prior appropriation of public funds before it can be spent. In this case, there is no evidence in the case that shows that the city of Wilmington appropriated funds specifically for the severance that was in the administration. Was there an appropriation for the other severance? I don't believe that issue came up. When was this money going to be spent? For the amended severance? It would have been. Sometime in the future? When the employment terminated. Which would have been some point in the future. It would have to have been after the new mayor took office, sometime after that. But the law provides that it has to be appropriated, and what's not appropriated Does it say when it has to be appropriated? Yes. The statute provides that you cannot enter into a contract to spend funds unless there's a prior appropriation. So in that regard, the city of Wilmington is unlike a GM or a private employer because the city of Wilmington is bound by the state statute, which requires in regards to an amended agreement such as this, which anticipates spending additional money, that there has to be a prior appropriation. Was this argued in the trial court? Yes, it was. We brought up 13 separate affirmative defenses to the amended agreements. One of which was lack of consideration. We also brought up no prior appropriation. We brought up that it was not published according to law. Law requires it to be published. We brought up several other affirmative defenses. The trial court, however, only ruled upon the lack of consideration. It did not rule upon the other issues. We mentioned in our brief that despite this issue of consideration, which we believe that there was no consideration, there are other factors which provide that this agreement is void. It wasn't entered according to law. And you did argue this in your brief because, boy, I must not have prepared well. It is in your brief. All right. I apologize. It is in our brief. It is. That's fine. I'll go over it carefully. Okay. It's the last argument we made in the brief that it's void on other grounds. So in this whole thing about consideration, the wording of the amendment provides that it was done to shorten the term and also to induce Plaintiff Imhoff and Plaintiff Caracchio to work basically another two weeks. And they were already obligated under the original agreements to work this additional two weeks. So our position is there was no consideration because they were already bound to work those two additional weeks. The evidence shows by the testimony of both Plaintiff Imhoff and Plaintiff Caracchio that this new amended agreement gave them no new additional duties. The facts also show that Plaintiff Imhoff actually finished his complete term of employment under the original agreement. He worked past May 31st as Chief of Police. And he did not actually sign the agreement until Mayor Orr took office. And by the express terms of the amended agreement, if this court were to find that it was valid, by the express terms of the agreement, he could not get a year's severance unless he was employed on the last day that Mayor Orr was mayor for his term. Because the amended agreements provided in Section 4, that this agreement shall commence on the 15th day of April 2008 and terminate at the end of the term of the mayor holding office at the time this agreement is executed. Plaintiff Imhoff did not execute the agreement until he signed it. And when he signed it, Mayor Orr had already been mayor for approximately three weeks already. The testimony, so even under the terms of the amended agreement, even if it is valid, he did not fulfill the terms to get any severance pay under that. We are also appealing based upon the fact that the judge's decision, finding that the Plaintiff Imhoff and Plaintiff Caracchio were entitled to severance under the original agreement is void for lack of subject matter jurisdiction. The complaint filed by Plaintiff Imhoff and Caracchio was based upon the amended agreements. They did not plead that they were entitled to severance under the original agreement. They did not plead it. They did not allege that the City of Wilmington breached the original agreement. They did not ask for relief under the original agreement. The City of Wilmington was denied a stay in court to contest whether or not the plaintiffs were entitled to severance under the original agreement. We cite a number of cases in our brief that provide that you have to frame the issues before the court and that's framed by the pleadings on file. The pleadings that were filed simply ask for relief under the amended agreement, not the original agreement. The original agreement, in order to sustain severance under that, they would have to show that they were terminated without cause based upon the first agreement. The first agreement provided for a term of employment until May 31, 2009 and that agreement provided that that termination date was subject to early termination pursuant to Sections A, B, and C. Section A dealt with termination for cause, Section B dealt with termination without cause, which would provide severance for Plaintiff Imhoff for three months and Plaintiff Caracchio for two months. So Plaintiff Caracchio testified that she stopped acting as City Attorney and City Administrator on May 5, 2009 because her contract was not renewed. She testified that Mayor Orr never gave her any sort of paper or never told her that she was going to be terminated, that her appointment was going to be terminated. All he told her was that she could work as City Administrator until such time as he appoints a new City Administrator and that happened with Mr. Imhoff as well. He continued working as Police Chief even past the term of the original agreement until a new Chief of Police was appointed by Mayor Orr in early June. So you're saying that the earlier severance agreement, its provisions were null and void at the time they normally terminated the original contract, right? In regards to Plaintiff Imhoff, that the original agreement terminated naturally without being terminated. And so therefore the original severance provision would have expired as well? Correct. It expires with the contract. And so it's not revived if there's an oral extension of that original? Correct. Basically Illinois law provides that if you're appointed a City Official you stay in that office even after you resign, you stay in that position until a replacement is duly appointed and qualified. So in this instance, Chief of Police Imhoff remained in his position until such time as his replacement was appointed. But he didn't have to? Correct. He did not have to. Even though Illinois law suggests that even once you resign you still hold office until a replacement is appointed and qualified. Well that's indentured servitude I think, and I think that would be enforceable. But let's go back to the point then. You're saying that even though he remained, he was outside of the original contract? Correct. And so the original contract encompassed the severance provision. And so that could not have been extended during that interim time? Correct. That's for Plaintiff Imhoff. For Plaintiff Peracchio, she did not sign the agreement until two hours before the new mayor took office. So basically she's asking for $37,500 an hour pay for two hours of work under an amended agreement. And we don't believe that that's appropriate in this instance. But that's what the city held out to her that she would get if she signed that, didn't it? That's what the outgoing administration told her. That if you, the agreement was you work until the end of the term and then you'll get a year's severance. Which she did. Yes, she did work until the term of the second, the amended agreement. Although it was in her hand to decide whether or not she was going to work until May 31st or not. And she decided to leave early, at least under the original agreement. But our whole point is that that amended agreement is void and unenforceable not just because of lack of consideration but because of the fact that the ordinance approving the one year severance for each party was not published according to the ordinance itself. And the case law states that if it says it's supposed to be published and you don't publish it, in this case it had to be published in pamphlet form, it was not. The testimony is clear that it was not published in pamphlet form. It was also clear that the person who was supposed to publish it didn't know about that and had not published anything in pamphlet form and just put it in the book that everybody could look at. That's possibly true. But our position is that it was the city administrator that should have seen that. The city's ordinances were faithfully executed and done properly and that city administrator was the very person that's before this court asking that you disregard the fact that it wasn't published when it was probably her duty to do it in the first place or see to it that it got done. This seems just a little bit weird. I mean, you've got the city saying to these employees, if you'll do this. I mean, setting up a contract, they never negotiated it with them. The city just did this unilaterally and saying we're going to change it. If you work for a shorter period of time, you're going to get a greater amount of severance. And now the city is here arguing that that's all void and it's all because of things that were solely within the power of the city to control. Is that an accurate reflection of what went on here? The city did not negotiate. Neither plaintiff asked to pass severance. You can finish your answer. Okay. Neither plaintiff approached the city and said we're going to leave early so you need to give us your severance to say until Mayor Strong leaves office. And once again, you have the fact that the city did not do it properly. They did not follow the law. And I believe the law is clear that you cannot enter into an appointment agreement without a prior appropriation. You can't enter into a contract without a prior appropriation. And it does need to be in pamphlet form. Did I answer? I don't know. That's fine. Thank you. Thank you. I agree with John that we would not be here if it was not for an election. I disagree with him, however, that you're allowed to look and I mean this respectfully, that any court is allowed to look behind the words of the statute because one of the legislature's leaders might have had an evil motive. Could you imagine what would happen to the laws in Illinois If we looked at every one of our friends in Springfield and said why is he doing this? If we were to do that, everybody's hands would be tied. And quite frankly, I don't think you want to do it. And respectfully, I don't think the law allows us to do it. It is quite possible that they wanted to have just as possible to what Chief Imhoff did. They want to keep the chief of police in place until the new mayor gets his own chief of police. And one way to encourage him not to leave immediately, like he has the right to do, is to promise him severance. I mean, that's one of the reasons that courts don't look behind consideration. Because you could split a thousand heirs in a thousand different ways and land in that same place. One of the things that Wilming has suggested to you is that you somehow don't have jurisdiction. Even though we plead a contract, paragraph 3, an amendment to the contract in paragraph 4, ask for severance in paragraph 5. I don't know what more you could do. I can just imagine if I had filed a two-count complaint, count 1 asking for the original agreement, count 2 asking for the amended agreement. I could quite well see the motion to dismiss that would follow there. We've addressed it in our brief, and I don't think it needs to be belabored further. Forgive me if I don't address all 13 affirmative defenses filed by the city to our complaint. I just turned the court's attention regarding the issue of appropriation to Judge Pettenger's ruling, where she indicates at page 5 that it appears the city had enough funds in the 2008 budget to pay the severance money. And if they'd been paid the original budget, it would have been amended. So she deals with the problem. It would be a pleasant problem to have, but anything can happen. As I understand it, she addressed those 13 defenses and ruled on them? She did, Your Honor. She did, Your Honor, and she touched on the other affirmative defenses. And arguably that ruling was against the city? Yes, it was. It is definitely against the city, Your Honor. So with that, I can't touch on all of them. I appreciate being heard. We'd ask you to reverse, in one instance, and affirm in the other. I have a question. Based on the example that you gave me earlier, your generosity towards the younger lawyers. In this case, though, is there any indication that either employee would have left before May 31? Both of the employees knew they weren't going to be there. Judge Pettigrew specifically found that they knew they weren't going to be there. They had the option to leave, not exercising that option, whether in your heart of hearts you just wanted to stay until the last possible moment. The court doesn't look at that. They look at what your rights are, not what's in your heart when you're doing it. My guess is, knowing my two clients, they're good, decent people, who really would have wanted to serve, and that Chief Emhoff wouldn't want the city to go out of police protection and that the administrator, Perasco, would not want them out of administration. But they had that right. By not exercising that right, that's sufficient consideration. But there's no evidence that they had another offer that they gave? No, Your Honor. There's no evidence of their other offers. Chief Emhoff wanted to stay as police chief. They apparently talked about other positions for him. The mayor testified he never liked Administrator Perasco, and she was never going to hang around him. He didn't like hiring him in the first place and voted against her. And so if both stayed until May 31st under the old agreement, they got no separation? Actually, I believe they do, and I think that Judge Petrenko addressed that. All right. So a termination just due to the end of the contract? No, their employment wasn't being extended by the new mayor. It was both of them. The judge said it was real clear they weren't going to sit in those positions. Okay. Thank you. Thank you, Your Honor. We will be taking the matter under advisement. I compliment both attorneys here today. You did a fine job of, one, being civil towards each other, which is so much appreciated in this courtroom, and, two, in being well-prepared, more prepared than I was here today. We'll be taking the matter under advisement and rendering a decision without undue delay.